think that this last clause means to authorize the court to make a "further allowance" for the performance of service by the messenger, for which a specific compensation is provided in the act. The law allows the messenger specifically "ten cents for each written note to the creditor named in the schedule," and I see not upon what pretence the court can, under this clause, allow more. But I do not understand that this charge is anywhere attempted to be sustained under this clause, or under any provision of the bankruptcy act. If I am informed correctly, it is claimed under the fee bill act of 1853, which gives the marshal a fee of "ten cents per folio for copies of . . . papers furnished at the request of any party." But I do not see that these notices are copies of any paper. Each notice is an original paper, and each differs from the others, at least in the name of the person to whom it is addressed, and usually in the name of the place to which it is directed. It is true, that the body of all the notices is identical, but this does not make any one a copy of another. No one is any more a copy than another. Therefore, if one is a copy all are copies, and if one is an original all are originals. There can be no copy without an original, and as one must be an original, it follows that all are originals. Moreover, these notices are not "furnished at the request of any party." They are sent by the messenger, because the law requires him to send them, and not because they have been requested by any one; and the law having prescribed a fee of ten cents for each written notice, I think there is not the slightest ground for allowing more under any such pretence as that all but one are copies, or under any pretence whatever. Each of the notices in this case follow precisely the form prescribed by the justices of the supreme court in form No. 6 [Rice, Manual, No. 22],[2] and each contains seven complete folios. The fee of ten cents for each is, therefore, grossly inadequate, but I am not authorized to substitute my judgment for the provisions of the statute.

The register has recommended that the assignee be allowed ten dollars as a reasonable compensation for his services, besides the actual disbursements made by him. The bankrupt objects to this allowance as unauthorized by the act. He does not object to the reasonableness of the allowance, if it is authorized, but he contends that there can be no allowance to an assignee, except "out of money in his hands," and it is admitted that there is no money in his hands in this case. On the other hand, the assignee asks for a larger allowance than ten dollars. The papers show that no assets or effects whatever were surrendered by the bankrupt, and that, in fact, he had nothing except his wearing apparel. Only one creditor proved his debt. And the assignee has had the least

possible amount of trouble in attending to his duties in the case. I think, therefore, that the allowance recommenued is reasonable, and cannot be complained of by the assignee. But the question remains, is any allowance authorized? Section 47 provides, that the assignee "shall be allowed, and may retain, out of money in his hands, all the necessary disbursements made by him in the discharge of his duty, and a reasonable compensation for his services, in the discretion of the court." I think it too plain for discussion, that this provision means, that the assignee is to be allowed both his disbursements, and, at all events, a reasonable compensation for his services in all cases, and that he may retain the sum allowed out of money in his hands, if he has any. The assignee is required to give notices by mail and by publication in newspapers, and to perform other services, involving actual expenditures. It is preposterous to suppose, that these disbursements are not to be refunded except where assets come to his hands; and the statute places the allowance of a reasonable compensation for services precisely upon the same footing as the allowance for disbursements. Besides, section 28 provides that he "shall not be obliged to proceed until the necessary funds are advanced or secured." The provision contained in section 28, relating to this subject, does not conflict with the provision in section 17, except so far, perhaps, as to limit the allowance for receiving and paying out money, to a certain per centum graduated by the amount. The actual disbursements made by the assignee have been paid him, by the bankrupt, but he is allowed the further sum of ten dollars. The taxation of the various officers must be reformed so as to accord with the principles announced in this opinion.

## Case No. 3,700.

### In re DEAN et al.

[2 N. B. R. (1874) 89 (Quarto, 29); 15 Pittsb. Leg. J. 581, 583.][1]

District Court, E. D. Missouri.

BANKRUPTCY—FRAUDULENT SALES—REGISTER'S POWERS.

1. A sale of a stock of goods, not made in the usual and ordinary course of business of a debtor, is prima facie evidence of fraud by section 35 of the statute [of 1867 (14 Stat. 534)].

2. The register has power to take affidavits and depositions, in cases not before him, at any time after the petition is filed.

On December 21st, 1867, the petitioners filed their petition to have said [Edwin B.] Dean adjudged a bankrupt, alleging that on November 26th, 1867, said Dean committed divers acts of bankruptcy, in contravention of the provisions of the act of congress approved March 2d, 1867. The acts of bankruptcy alleged in the petition were as follows: That

---

[2] [From 1 Am. Law T. Rep. Bankr. 9.]

[1] [Reprinted from 2 N. B. R. 89 (Quarto, 29), by permission.]

on that day, November 26th, he conveyed to his son-in-law, George Kemmel, real estate in Cape Girardeau, of the value of seven thousand dollars, with intent to hinder, delay and defraud his creditors; that on the same day he made and put on record a deed to his father-in-law, C. F. Scheusler, for real estate in Cape Girardeau, of the value of four thousand dollars, with intent to hinder, delay and defraud his creditors; and that on the same day, with like intent, he conveyed to his son-in-law, Thomas F. Garrett, the whole of his stock of merchandise then in his store in Cape Girardeau, of the value of six thousand dollars; and also fraudulently stopped payment of his commercial paper, he being a merchant and trader. Depositions proving the debts of the petitioning creditors and the acts of bankruptcy were filed with the petition. At the same time a petition was also filed praying for an injunction to restrain the said Garrett from selling or disposing of any of the goods conveyed and transferred to him by said Dean; alleging the several acts of bankruptcy; that Dean was insolvent; that on that date, November 26th, he conveyed away all of his property by deeds to different parties; that Garrett knew of Dean's condition and insolvency; that Garrett paid no cash for said stock of goods; that he purchased the same at a discount of twenty-five per cent. below cost, and gave his notes at eighteen months and three years from date in payment; and that said Garrett was himself insolvent and unable to pay his debts, and would not be able to respond in damages to the assignees should said Dean be adjudged a bankrupt.

The court directed a rule to show cause to issue against Dean, and also granted an injunction to restrain Garrett from selling or disposing of the goods until the further order of the court, and made the same returnable on January 6th. On that day Dean appeared and demanded a jury. Garrett filed his answer to the petition with a motion to dissolve the injunction. The hearing of the motion was set down for Thursday, Jan. 16th, when the parties appeared by counsel. The answer of Garrett, alleged that he bought the goods fairly, for a fair consideration, without any knowledge of Dean's insolvency; that the value of the goods was four thousand and eighteen dollars and fifty cents: that twenty-five per cent. less than cost at invoice of five thousand four hundred dollars was but a fair deduction, considering the character and condition of the stock; that he paid three hundred and three dollars and ninety cents in cash, and gave seven notes of five hundred dollars each, two payable in eighteen months with interest, and six payable in thirty-six months, and one for two hundred and fourteen dollars at three years.

The counsel for Garrett read a number of affidavits to show that four thousand and eighteen dollars and fifty cents was the par value of the stock; that Garrett was a good business man and in good credit.

Counsel for petitioner read affidavits to show acts of bankruptcy by Dean; that he was largely indebted, was insolvent; and also offered in evidence copies of the conveyances made by Dean, November 24th, and also affidavits to show that said Dean had stated that he had conveyed away all his property and was worth nothing, and that he intended to secure his children first, friends next, and creditors last. He also read affidavits to show that Garrett was acquainted with Dean's insolvency; that said Garrett had himself failed is 1866, and in 1867 had compromised with his creditors at fifty cents on the dollar, giving long paper of Whitelaw & Garrett (a brother of Thomas F.,) in payment

TREAT, District Judge. It is apparent, from the papers and the evidence presented, that there was a sale of a stock of goods, not made in the usual and ordinary course of business, of the debtor, who was a retail dealer and merchant at Cape Girardeau. The statute (section 35) makes such a sale and transfer prima facie evidence of fraud, and avoids the sale. It appears, from the answer and affidavits filed, that Garrett had been engaged in taking an account of the stock previous to his purchase; that he was present when demand of payment of debts due was made of Dean, and that he therefore knew that Dean was indebted and could not pay his debts; that for a stock of goods, valued, by his own statement, at over four thousand dollars, he paid but three hundred and three dollars in cash, and gave his notes at eighteen months and three years, which, to that extent at least, delayed creditors, and that, as far as Dean was concerned, the transfer was fraudulent and void, and that respondent himself had within a year compromised his own debts, and, therefore, did not appear responsible in damages should Dean be adjudged a bankrupt and an assignee be appointed to take charge of the interest of the creditors. The prima facie case made by the petition was not rebutted and the injunction must be continued. Motion to dissolve injunction overruled.

After the filing of the petitions above referred to, and before service of the rules to show cause, the petitioning creditors proceeded to take depositions at Cape Girardeau, before Alex. Ross, register, having served notice upon both Dean and Garrett.

Respondents, by counsel, moved to suppress the depositions, for the reason that they were taken before the rules to show cause were served upon respondents; and because the register had no authority to take depositions until the cause was referred to him, after a warrant in bankruptcy was issued.

Mr. Whittelsey, for petitioners, referred to section 38 of the act providing that the filing of the petition against the debtors should be deemed to be the commencement of the proceedings, and also as giving authority to the register to take depositions in cases not before him.

TREAT, District Judge. It is apparent, by comparing the different provisions of the act, and section 4 with 38, that registers have power to take affidavits and depositions. Their authority to take proof of debts in all cases, whether pending before them or not, is given by section four. In cases referred to them they act as assistants to the judge and the courts. The filing of the petition is the commencement of proceedings, and after the filing depositions may be taken. In many cases it is essential that the petitioner should take depositions in order to be ready for trial upon the return of the order to show cause. Motion to suppress overruled.

## Case No. 3,701.

### In re DEAN.

[3 N. B. R. 768 (Quarto, 189).] [1]

District Court, W. D. Texas. 1870.

BANKRUPTCY—EFFECT OF BANKRUPT'S DISCHARGE—POWERS OF REGISTER.

Where bankrupt had filed his petition in bankruptcy, and in due course obtained a final discharge, certain creditors subsequently filed petitions and insisted before the register that he should grant orders compelling the assignee to sell and convey certain property which had passed out of bankrupt's hands, and over which he had no control, to satisfy judgments which they had obtained against bankrupt, but which register refused to entertain. *Held*, the liens did not exist; but if they did, it was not competent for the creditors to enforce them after the bankrupt had been discharged. The register was right in his conclusions, and they are ratified and confirmed by the court.

[Cited in Re Jones, Case No. 7,449; Re Witkowski, Id. 17,920; Re Dole, Id. 3,964.]

[In bankruptcy. In the matter of Calloway Dean.]

DUVAL, District Judge. Dean filed his petition in bankruptcy on the 26th of December, 1868, and received a final discharge on the 28th day of January, 1870. It appears from the statement of facts and exhibits referred to in this case, that Mr. I. J. Roberts, a creditor of the bankrupt, recovered a judgment against him in the district court of San Augustine county, in the month of October, 1866, for one thousand and thirty-five dollars, and on the 22d day of October, 1869, he filed in the office of the register at Tyler, proof of debt as shown by said judgment, together with certificates of the proper officers, showing that the same had been recorded during the months of October and November, 1866, in the counties of Navarro, Limestone, Freestone, Houston, and Panola. Another creditor, Candy Raquet, recovered a judgment against the bankrupt in the district court of Smith county, on the 27th of November, 1868, for five hundred and forty-one dollars and twenty cents, and on the —— day of ——, 1869, made proof of this debt, with lien as thereby claimed, on about two thousand acres of land, situate in said county of Smith. It further appears that the bankrupt had become involved several years before his bankruptcy; that his wife had died in 1857; that he had subsequently sold, or otherwise disposed of, largely over his half of the community property, and that under these circumstances, and with a view to indemnify the children of his deceased wife (some of whom were minors) for their portion of the community property disposed of by him, he executed a conveyance to them, on the 10th of July, 1868, of all his lands, except five hundred and fifty acres in Harrison county, three hundred and twenty acres in Limestone county, and one hundred acres in San Augustine county, and of which lands one-half only were surrendered in bankruptcy. The deed of conveyance to his children was filed for record on the 8th of December, 1868.

On the 5th of October, 1868, an execution was issued on Roberts' judgment, which was levied on the 19th of November, 1868, on one thousand two hundred acres of land in Navarro county. The land was sold on the first Tuesday in February, 1869, and Roberts became the purchaser for sixty dollars. The creditors, Roberts and Raquet, filed their petition, and insisted before the register:

First. That he should grant an order compelling the assignee to convey the said one thousand two hundred acres of land to Roberts, by virtue of the judgment, levy, and sale, as aforesaid. This the register refused to do, because the said one thousand two hundred acres had been conveyed by the bankrupt to his children before the levy was made, and as the bankrupt was not then the owner, the levy created no lien. Further, because the sale was made after the filing of the bankrupt's petition, and was therefore void, unless ratified by the assignee, and proceeds paid over to him; and lastly, because it was not competent for the register to make such an order, when the land sought to be conveyed neither belonged to the bankrupt nor was surrendered in bankruptcy by him.

Second. That an order of sale should be made for the one hundred acres of land in San Augustine county, in satisfaction of the lien claimed to exist in favor of Roberts by the judgment rendered in that county in October, 1866. The register declined making the order on the ground that said judgment created no lien under the law; that from the 14th of February, 1860, to the 9th of November, 1866, a judgment in a court of record in Texas created no lien on real estate, unless the same was recorded in the clerk's office of the county court in the county where the land was situated, and that no such record appeared in this case.

Third. That an order should be made by the register to sell the five hundred and fifty acres in Harrison county, and the three hundred and twenty acres in Limestone county, to satisfy the lien created in favor of Roberts by recording his judgment therein, before the bankrupt filed his petition in bankruptcy.

---

[1] [Reprinted by permission.]